UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| DAVID TURNER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:11CV168 SNLJ |
| ) | |
| JOHN ROACH, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on the defendant's motion for summary judgment (#23) and plaintiff's motion to compel (#38). Both motions have been fully briefed and are now ripe for disposition.

**I. Background**

The following facts are undisputed except where indicated.

At all relevant times, plaintiff was an inmate at the Southeast Correctional Center ("SECC"). On November 4, 2010, defendant John Roach, a correctional officer, and another correctional officer arrived at plaintiff's cell. Plaintiff struggled to obtain and swallow contraband (marijuana) that he had concealed in his sock, and plaintiff ultimately swallowed the marijuana. Plaintiff was handcuffed in front[1], and he was escorted from the cell to the infirmary. Plaintiff asserts (and defendant denies) that, on the way out of the housing unit and in an area with limited video surveillance, defendant Roach slammed plaintiff's head into a door, resulting

---

[1] Defendant maintains that plaintiff was struggling too much to be handcuffed in back, but plaintiff denies he struggled after swallowing the contraband.

-1-

in a "gash" on his forehead. Defendant maintains that he does not know where plaintiff's injury occurred, but defendant's incident report states that plaintiff "sustained a small cut over his left eye during the struggle in the cell." The gash was treated at the infirmary with steri-strips. Plaintiff was kept in a "dry cell" for three days while prison officials waited for him to "pass" the contraband marijuana, and during that time, nurses checked on him every two hours. Plaintiff testified that he did not complain about pain because his head did not hurt after the day of the incident.

Plaintiff brought this action against defendant Roach alleging an excessive force claim.[2] Defendant filed a motion for summary judgment on plaintiff's claim against him. Plaintiff has also filed a motion to compel. Both motions will be addressed below.

## II.     Summary Judgment Motion

### A.     Summary Judgment Standard

Courts have repeatedly recognized that summary judgment is a harsh remedy that should be granted only when the moving party has established his right to judgment with such clarity as not to give rise to controversy. *New England Mut. Life Ins. Co. v. Null*, 554 F.2d 896, 901 (8th Cir. 1977). Pursuant to Federal Rule Civil Procedure 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 467 (1962). The burden is on the moving party. *City of Mt. Pleasant, Iowa v. Assoc. Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th

---

[2] Another claim against two other correctional officers was dismissed by the Court pursuant to 18 U.S.C. § 1915.

Cir. 1988). After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

In ruling on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. *Buller v. Buechler*, 706 F.2d 844, 846 8th Cir. 1983). The court is required to resolve all conflicts of evidence in favor of the nonmoving party. *Robert Johnson Grain Co. v. Chem. Interchange Co.*, 541 F.2d 207, 210 (8th Cir. 1976).

B.  Discussion

The parties agree that plaintiff sustained a cut on his forehead as the result of an incident on November 4, 2010. Plaintiff alleges that, after a struggle in his cell and while en route to the infirmary, defendant slammed his head into a door frame while in an area that lacked surveillance cameras. Defendant states that plaintiff sustained the injury during the struggle in his cell and that, regardless, the injury was *de minimis*. Video footage showing plaintiff being escorted to the infirmary is not sufficiently clear to allow the viewer to see whether plaintiff is injured; no blood is visibly dripping from plaintiff, and his white shorts appear clean throughout the video footage.

"The Eighth Amendment bars correctional officers from imposing unnecessary and wanton pain on inmates, regardless of whether there is evidence of any significant injury." *Johnson v. Blaukat*, 453 F.3d 1108, 1112 (8th Cir. 2006) (citing *Hudson v. McMillian*, 503 U.S.

1, 9 (1992)). Nevertheless, the "Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9-10 (internal quotations omitted). "Officers may reasonably use force in a good-faith effort to maintain or restore discipline but may not apply force maliciously and sadistically to cause harm." *Id.* at 6 (internal quotation omitted).

Even if the Court accepts that plaintiff's injury resulted not from the use of force inside the cell but from a shove during plaintiff's transport, plaintiff cannot support an excessive force claim because his injuries and the force alleged were de minimis. The Supreme Court has admonished the district courts to heed "*Hudson*'s direction to decide excessive force claims based on the nature of the force rather than the extent of the injury." *Wilkins v. Gaddy,* 130 S.Ct. 1175, 1177 (2010) (per curiam). However, "the extent of the injury may also provide some indication of force applied." *Id.* at 1178. Here, plaintiff's injury bled minimally (medical records show that it was not bleeding when he received nearly immediate treatment, and there is no sign of bleeding on the surveillance footage), and the bandage was removed less than 24 hours later³. In addition, plaintiff testified that the wound did not hurt the next day.

Pursuant to *Wilkins* and *Hudson*, however, the *de minimis* nature of plaintiff's injuries does not end the Court's inquiry. The overriding factor is whether the officers used force "in a good-faith effort to maintain or restore discipline," or applied force "maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6. "The test for reasonableness or good faith application of

---

³Plaintiff's medical records state that the bandage was removed in the early morning of November 5. Plaintiff testified that he removed the dressing himself when he was returned to "the hole," three days after the injury. Either way, treatment was in no way prolonged.

force depends on 'whether there was an objective need for force, the relationship between any such need and the amount of force used, the threat reasonably perceived by the correctional officers, any efforts by the officers to temper the severity of their forceful response, and the extent of the inmate's injury.'" *Johnson*, 453 F.3d at 1112 (quoting *Treats v. Morgan*, 308 F.3d 868, 872 (8th Cir. 2002)). As defendants maintain, there is no showing that defendant's actions were malicious or sadistic, and the injury (again, even assuming it happened as plaintiff claims) may be explained by the manner in which the plaintiff and his two escorts had to navigate doorways. Although plaintiff claims he was not combative after he swallowed the contraband, it is clear from video surveillance footage that he resisted the officers during transport. Because the escort required an officer on both sides of plaintiff, going through doorways was difficult. Video footage shows plaintiff ducking down after exiting the inner door, and the officers clearly struggled to contain plaintiff while he was in the vestibule area. The video shows the three men struggling as they approach the outer door — allegedly where defendant assaulted plaintiff — but there is no sign that the officers are behaving maliciously. Rather, it is quite clear that they are trying to maintain control over a difficult prisoner. The video footage plainly demonstrates that the officers were engaged "in a good-faith effort to maintain or restore discipline," *Hudson*, 503 U.S. at 6, and there is no evidence that any contact plaintiff may have had with the door frame (unlikely as it seems from the video footage) was the result of malice on the part of defendant Roach.

      Plaintiff has submitted two affidavits from fellow prisoners stating that they saw defendant Roach "slam" plaintiff's head against the door frame, but that evidence does not suffice to show that defendant's behavior was malicious or sadistic. Indeed, it is clear from the

video surveillance footage that the plaintiff was resisting the two officers in the vestibule as they approached the outer door. The video shows that no one demonstrated any malice or sadistic behavior. Rather, it shows the officers attempting to control a prisoner as they exit the building; even if plaintiff's head did make contact with the door frame, the video shows that no one behaved maliciously or sadistically toward plaintiff.

As the Supreme Court has explained, "[w]hen the moving party has carried its burden under Rule 56(c)," as defendant has done here, his "opponent must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Matsushita Elec. Industrial Co.*, 475 U.S. at 586-87). Because plaintiff — particularly in the light of the video surveillance footage — has not set forth specific facts showing that there is sufficient evidence to allow a jury to return a verdict for him, the Court will grant summary judgment to defendant Roach. *See Anderson*, 477 U.S. at 249; *Celotex Corp.*, 477 U.S. at 324.

### III. Plaintiff's Motion to Compel

Plaintiff requests that the Court compel defendant to produce documents listed in his first motion to compel (#21). Those documents requested are blow-up images from the DVD surveillance cameras that have been produced in this case, "Haze-Mat" documents related to the complaint, certain prison policies regarding use of force or strip searches. Defendant states that (1) it does not have the capability to produce blow-up images from the DVD, (2) it has no documents related to "Haze-Mat" related to the complaint, and (3) documents responsive to

plaintiff's request for documents related to prison policies cannot be provided to plaintiff due to security concerns.

Defendant is not required to produce documents not in its possession, custody, or control. As a result, the Court will not compel him to produce blow-up images and "Haze-Mat" documents related to the complaint — no such documents exist.

With respect to the policies, even if there were no security concerns appurtenant to supplying those policies to prisoners, the Court agrees with defendant that the policies are not relevant to plaintiff's complaint. The scope of discovery is limited to "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Plaintiff complained that defendant slammed his head into a door frame as defendant and another officer escorted him to the infirmary — the incident did not occur during the strip search or the ensuing struggle, and thus the policies are not relevant to plaintiff's claim.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion for summary judgment (#23) is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff's motion to compel (#38) is **DENIED**.

Dated this   31st   day of October, 2012.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE